UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SEDRICK SIMMS                                          CIVIL ACTION

VERSUS                                                NO.  08-4136

F. HARRIS ET AL.                                      SECTION "N" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Sedrick Simms, is a prisoner currently incarcerated in the Rayburn
Correctional Center in Angie, Louisiana.  He filed this complaint pro se and in forma
pauperis pursuant to 42 U.S.C. § 1983 against Sgt. Fred Harris of the Jefferson Parish
Sheriff's Office and the Jefferson Parish Correctional Center ("JPCC") Medical Program.
Simms alleges that while incarcerated in the jail, Sgt. Harris shot him with a taser gun
and he was subsequently denied proper medical care for the resulting injury.  Simms
seeks monetary, injunctive and declaratory relief.  Record Doc. No. 1, Complaint at ¶ IV
and V.

On March 5, 2009, I conducted a telephone conference in this matter.
Participating were plaintiff pro se and Jason Thrower and Brad Theard, counsel for
defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v.
McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

During the Spears hearing, Simms testified that he is currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center based upon his conviction on January 17, 2008 of illegal discharge of a firearm and control of a dangerous substance, for which he is serving a sentence of five (5) years in prison. Plaintiff confirmed that he asserts two claims in this case arising from an incident that occurred on June 8, 2007, while he was a pretrial detainee in the JPCC: (1) excessive force and (2) failure to provide adequate medical care.

Asked to describe what occurred on June 8, 2007, Simms testified that he was attempting on that day to "get the ranking officer to come speak to me." Simms testified that, when he could not get the officer's attention, he began to cause a flood in his cell. He explained that at that time he was being held in a "lockdown tier" for violating jail disciplinary rules, including "fighting, cursing, . . . just different types of things, even flooding down once before." He stated that "flooding down" means he stuffed a cup into his toilet and began flushing the toilet to make it overflow and flood the floor of his tier with water so he could get the attention of the ranking officer. Simms said he needed to speak to the ranking officer about his medications, and he caused the flood in his tier intentionally because his first few attempts to get the attention of the officer on duty had not been successful.

Simms testified that he was housed in a one-man cell when he caused the flood. He said two ranking officers and three or four additional deputies responded to the flood he caused. He testified that, when the deputies arrived, they told him to come to the bars to be restrained for the deputies' safety. Simms stated that he complied and that, when they opened his cell, defendant Sergeant Harris, who plaintiff alleged had a history of harassing inmates, ordered him to lie down on the floor so that Simms could be restrained. Plaintiff stated that, when one of the other sergeants approached Simms to handcuff him, Harris told the deputy not to do so until Simms got down in the water on the floor. "When I was getting up, I was trying to explain to him, 'why do I have to lay in the water, when they got urine in it,'" Simms testified. He stated that Harris ordered him to lie in the water, which Simms himself had intentionally caused to be on the floor, but Simms objected and ignored the order. He testified that Harris told him "either lay in the water or I'm gonna hit you with the taser."

Simms said Harris then asked him why he had caused a disturbance. Simms testified that, while he was trying to explain to Harris why he had caused the flood, "before I know it, I had gotten hit with the taser and fell back and bust [sic] my head, and I'm still getting treated to this day."

Simms testified that after he fell, he was taken to a holding tank on another floor of the jail, while pictures were taken and medical personnel were summoned. Thereafter,

he said, he was "in medical observation for a few days and put in an isolation tank." He alleged that Harris was the officer who fired the taser at him by shooting it from across the room. Simms stated that the projectiles shot from the taser gun were "stuck in me and they had to pull it out." He explained that the taser shot caused him to fall and strike the back of his head.

Simms testified that a nurse who first treated him at the jail said he needed either staples or stitches "because the wound was thrust open like I had been hit in the head." He said that he continues to be treated for the wound, which has not yet healed. He said he continues to suffer with migraine headaches, he cannot lie on his back for very long, and he continues to have some sort of bleeding from the wound. Simms clarified that the back pain he occasionally suffers had been caused by something else that happened "when I was in the world" and did not result from the taser incident. He said that when he was tasered he was knocked unconscious only "for a brief second."

Simms testified that immediately after the incident he was taken to a second floor holding tank, where he waited for a crime lab officer. He said he was kept in the holding tank for about two hours before he was taken to the medical department in the jail. He testified that, while he was in the holding tank, crime lab officers took pictures and collected the taser projectiles.

Simms testified that, when he was taken to the medical department, a nurse "wiped my head off, put a bandage on it and put me in medical observation to see the head nurse." The nurse told him that she did not have the authority to send him outside the jail for stitches or staples. He said he was kept in the medical department "about a few days, probably between one to five days."

Simms asserted that he had <u>not</u> received a copy of the medical records previously ordered and received by the court. Record Doc. Nos. 6 and 19. Counsel for defendant, the JPCC Medical Program, has since provided a copy of these records to plaintiff and certified that he has done so. Record Doc. No. 35.

Plaintiff's medical records from the jail, Record Doc. No. 19, confirm the essential substance of his testimony, including particularly that the incident giving rise to his claims occurred on June 8, 2007. During his testimony, Simms also confirmed the references in the medical records that he was taken to the jail infirmary on the same day, that an ointment of some sort was administered, that bandages were applied and that the darts from the taser gun were removed. The medical records indicate that Simms was kept in the infirmary from June 7 through June 11, 2007, when he was discharged, and Simms agreed that the time frame reflected in the records was about right. The medical records also indicate that he was given a pain medication, which Simms thought was Motrin, and he confirmed the reference in the medical records that his bandages were

changed "seven days a week." Simms testified that he spoke to a doctor at the jail about his injury several days later, either the day before or the day after he was released from lockdown, which the records indicate occurred on June 14th, and the doctor told him that the healing process had already begun and "it would just have to heal naturally."

Simms testified that he left the jail in Jefferson Parish in February 2008, after having been arrested on April 6, 2006 and having pled guilty in January 2008. He estimated that he was seen by a doctor or a nurse at the JPCC concerning these injuries whenever he went to "bandage change," which occurred "every day" from the time he left the infirmary for about three months thereafter. He said he received no further treatment for his head injuries at the Jefferson Parish jail after that three-month period (which would have ended some time in September 2007). The medical records indicate, however, that on several occasions throughout 2007 and into January 2008, he received medication and treatment for headaches and a "small amount" of bleeding when he "aggravated [an] old [head] wound."

Simms stated that he is currently being treated for his head injuries at the prison facility where he is housed, including three doctor examinations during which he was placed on antibiotics for ten days, with bandage change five days a week, followed by another period of treatment with antibiotics for 14 days and further treatment for an infection. He said that he currently is taking more antibiotics and other kinds of pills.

Simms testified that Harris hit him with the taser intentionally because he had been dating one of Harris's family members, so he thought Harris had struck him with the taser for personal reasons ["that I was messing with his niece"], not because Simms had flooded his cell and then ignored Harris's order to lie down in the water on the floor. "He was out to hurt me intentionally, not just because I disobeyed him," Simms said. He alleged that he should have been shackled to the bars of his cell, not ordered to lie down on the flooded floor during the disturbance he caused.

Simms testified that, after he left the Jefferson Parish jail in February 2008, he was transferred temporarily to Hunt Correctional Center, where he stayed for two or three weeks. He said that he was sent to Rayburn on March 4, 2008, where he has been incarcerated ever since.

On cross-examination, Simms confirmed that he was in the medical observation unit in the Jefferson Parish jail for several days after the incident. He stated that, when he was examined by the head doctor at the jail, he was told that he could not receive stitches because the healing process had already begun. He confirmed that his bandage was changed every day for about three months, that he told medical personnel during the re-bandaging whether he was having any problems, and that sometimes he was given medication. He stated that he only submitted one sick call request during that period and that he raised any questions he had about his injuries during his bandage changes.

Prior to the Spears hearing, defendants filed two dispositive motions, which are currently pending. The first is the motion of the JPCC Medical Program to dismiss plaintiff's complaint for his failure to (1) provide additional information regarding his claims as ordered by the court;[1] (2) sue a juridical entity; (3) or allege a policy, custom or practice sufficient to maintain an official capacity claim against the jail's medical staff. Record Doc. No. 17. Because defendant's motion was supported by an attached exhibit beyond the pleadings, I converted it to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(b). Record Doc. No. 26. The second motion is that of defendant Harris for summary judgment, which argues that plaintiff's claims are time-barred by the applicable statute of limitations. Record Doc. No. 24.

In his written response and statement of material facts, plaintiff conceded that the alleged assault occurred on June 8, 2007. Record Doc. Nos. 27 and 28. Defendant JPCC asserted in its reply memorandum, Record Doc. No. 32, that plaintiff's claim of deliberate indifference concerning medical care should be dismissed for failure to state a claim and that plaintiff's claims are prescribed. Plaintiff was permitted to file a "traverse" to defendant's reply memorandum, with his attached affidavit, which generally confirmed his oral testimony provided during the Spears hearing. Record Doc. No. 36.

---

[1]Defendant's first argument is now moot because plaintiff subsequently provided the information sought by the court, Record Doc. Nos. 5, 7 and 23, and my earlier report and recommendation to dismiss plaintiff's claims for failure to prosecute has been vacated. Record Doc. Nos. 20 and 26.

For the following reasons, **IT IS RECOMMENDED** that defendants' motions for summary judgment be GRANTED. Even accepting plaintiff's testimony as true for purposes of the pending motions, the undisputed facts establish that plaintiff's excessive force claim is barred by the applicable one-year prescriptive period or statute of limitations and that he cannot establish a claim of unconstitutional medical care cognizable under Section 1983 as a matter of law.

## ANALYSIS

I.      STANDARDS OF REVIEW

(A)     28 U.S.C. § 1915A Screening

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. <u>Spears</u>, 766 F.2d at 180. "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls,

examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

(B)    <u>Motions for Summary Judgment</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. <u>Capitol Indem. Corp. v. United States</u>, 452 F.3d 428, 430 (5th Cir. 2006) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. <u>National Ass'n of Gov't Employees v. City Pub. Serv. Bd.</u>, 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of its claim. <u>Id.</u> (citing <u>Celotex</u>, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other

facts immaterial." Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d at 430.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original).

II.     STATUTE OF LIMITATIONS/PRESCRIPTION

Simms's Section 1983 claim of excessive force against defendant Harris arising from the June 8, 2007 incident in which he was shot with a taser gun is barred by the applicable statute of limitations, the concept of "prescription" under analogous Louisiana law.  Defendants have asserted this defense in their motions.  In addition, "[t]he district court may sua sponte raise the limitations defense in a suit filed in forma pauperis under 28 U.S.C. § 1915." Lopez-Vences v. Payne, 74 Fed. Appx. 398, 2003 WL 22047325, at *1 (5th Cir. 2003) (citing Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir. 1993)).

Although Section 1983 contains no express statute of limitations, the one-year Louisiana prescriptive period for torts is applicable to suits in this federal court under Section 1983. Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998).  Louisiana law provides for a one-year prescriptive period from the date of injury or damage.  La. Civ. Code art. 3492; Clifford, 298 F.3d at 332; Jacobsen, 133 F.3d at 319.

Plaintiff's excessive force claim in the instant case is based on an incident that occurred on June 8, 2007.  Thus, he had one year from June 8, 2007 within which to file suit.  The date when the clerk of court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints.  Martin v. Demma, 831 F.2d 69, 71 (5th Cir. 1987).  However, in the pro se prisoner context, a

"mailbox rule" applies so that the date when prison officials receive the complaint from the prisoner for delivery to the court is considered the time of filing for limitations purposes. Stevenson v. Anderson, 139 Fed. Appx. 603, 2005 WL 1367766, at *1 (5th Cir. 2005); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995); Harrell v. Edwards, No. 05-4002, 2007 WL 734387, at *4-5 (E.D. La. Mar. 6, 2007) (McNamara, J.).

In this case, the earliest date on which prison officials could have received Simms's complaint for delivery to this court is July 24, 2008, when he signed it.[2]  Record Doc. No. 1 (Complaint at p. 4).  His complaint is therefore considered to have been filed and this action commenced on July 24, 2008 for limitations purposes.

Federal law determines when a Section 1983 claim accrues. Jacobsen, 133 F.3d at 319.  The Fifth Circuit has held that the Section 1983 prescriptive period commences when the aggrieved party either knows of the violation or has notice of facts which, in the exercise of due diligence, would have led to actual knowledge. Brown v. Nationsbank Corp., 188 F.3d 579, 589-90 (5th Cir. 1999); Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995).  Determination of when a plaintiff knew or should have known of the existence of a possible cause of action has two factors:  "(1) [t]he existence of the

---

[2]The complaint was actually tendered to the Clerk of Court for filing in this court about a week later, on July 30, 2008.

injury; and (2) causation, that is, the connection between the injury and the defendant's actions." Id.

In addition to applying the forum state's statute of limitations, federal courts should give effect to any applicable tolling provisions provided by state law. Lopez-Vences, 2003 WL 22047325, at *1; Gartrell, 981 F.2d at 257; Parks v. City of Slidell, No. 97-1993, 1998 WL 158952, at *4 (E.D. La. Apr. 1, 1998) (Clement, J.).

The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem. Under this theory, there are four situations in which the one-year prescriptive period for delictual actions will not run: (1) if there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action, (2) if there was some condition coupled with the contract or connected proceeding which prevented the creditor from suing or acting, (3) if the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action and (4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Id. (citing Corsey v. Department of Corrections, 375 So. 2d 1319, 1321-22 (La. 1979)).

Thus, the "doctrine of contra non valentem recognizes that in limited circumstances prescription should not run if good cause exists as to why plaintiff would

have been unable to exercise or was lulled into not exercising a cause of action when it first became exigible." <u>Pracht v. City of Shreveport</u>, 830 So.2d 546, 551 (La. App. 2d Cir. 2002).

The events on which plaintiff bases his excessive force claim occurred on June 8, 2007. It is clear from his own testimony that Simms knew on that date of the existence of his injuries and the connection between those injuries and the actions of defendant Harris in shooting plaintiff with a taser gun. Thus, Simms asserts an excessive force claim based exclusively upon an event that occurred more than one year before July 24, 2008, the date on which his complaint is deemed filed under the mailbox rule. Under these circumstances, his excessive force claim must be dismissed due to expiration of the one-year statute of limitations.

Plaintiff has not asserted any cause or condition that prompts application of the doctrine of contra non valentem. His complaint and testimony establish that, more than one year prior to his filing of the instant action, even under the liberal "mailbox rule," Simms knew of defendants' allegedly unconstitutional use of force and his resulting injuries. The record establishes no condition that might have tolled the statute of limitations or upon which the doctrine of contra non valentem might be applied. In short, because plaintiff did not commence his excessive force claim within the required one-year limitations period after he knew or should have known of the alleged constitutional

violations, his excessive force claim under Section 1983 is time-barred and must be dismissed.

III.   <u>MEDICAL CARE</u>

The medical care that Simms received immediately after the taser incident cannot be the subject of a properly asserted Section 1983 claim because any such action is also time-barred for the reasons discussed above. However, Simms alleges a continuing violation of his constitutional rights in relation to his medical care, including a failure to provide adequate care through the end of his incarceration in the JPCC in February 2008, only about five months before he is deemed to have filed this lawsuit. Thus, it cannot be concluded that his medical care claim is time-barred in its entirety. Nevertheless, for the reasons discussed below, it is clear from plaintiff's testimony and the medical records that he cannot establish a viable Section 1983 claim for inadequate medical care as a matter of law. Accordingly, defendants are entitled to summary judgment in their favor on this claim.

It appears that Simms was a pretrial detainee for most of the time and a convicted prisoner for some of the time about which he complains about his medical care. Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government

interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Mayweather v. Foti, 958 F.2d 91

(5th Cir. 1992); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987).  The inquiry was

"whether the denial of medical care . . . was objectively reasonable in light of the

Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

punishment of pretrial detainees."  Pfannstiel v. City of Marion, 918 F.2d 1178, 1186

(5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d

449, 455 (5th Cir. 1992).

> In Hare, however, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.  The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice."  Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical

needs" to satisfy this prong.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u> at 837.  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."  <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citing <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997)) (additional citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291.

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in Hare are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, Simms fails completely to allege facts sufficient to establish deliberate indifference.

Initially, it cannot be concluded that the scalp laceration and headaches about which Simms complains constitute serious injury sufficient to implicate constitutional concerns. See Vaughn v. City of Lebanon, 18 Fed. Appx. 252, 2001 WL 966279, at *20 (6th Cir. 2001) (no serious medical need when treating physicians analogized plaintiff's pepper-spray-related symptoms to a case of poison ivy and when his cuts, bruises and abrasions from struggle were visible but not permanent); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (swollen, bleeding wrists from handcuffs that were too tight do not constitute serious medical need); Martin v. Tyson, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (toothache and ear infection not sufficiently serious); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (sliver of glass in detainee's palm and minor cuts and bruises were not serious injuries); Willacy v. County of Brevard, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (inmate who alleged that he suffered numerous lacerations, contusions, bruising and burning sensation in his eyes after being

attacked by another inmate, but did not seek further medical assistance after his wounds were cleaned, failed to assert a serious medical need); Solomon v. Moore, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (plaintiff who repeatedly signed up for sick calls because of alleged pain in his back and neck, who either did not show up for appointments or was prescribed very moderate pain medication, and who was able to walk and function normally throughout time period of sick call requests did not present serious medical need); Banks v. Mannoia, 890 F. Supp. 95, 99 (N.D.N.Y. 1995) ("bowel problems" and headaches not considered serious medical problems); Griffin v. DeRobertis, 557 F. Supp. 302, 306 (N.D. Ill. 1983) (aches and sore throat not serious).

Even assuming, however, that plaintiff's scalp laceration and headaches resulting from the fall caused by the taser shot were serious conditions for constitutional purposes, Simms has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint as amended by his testimony shows that he received constitutionally adequate medical care for the injuries sustained in the taser incident while incarcerated at the jail when he was provided with immediate medical attention, including a days-long stay in the jail's medical observation unit, regular examinations (including daily bandage changes) and medication for his condition. See Baker v. Brantley County, 832 F. Supp. 346, 352 (S.D. Ga. 1993), aff'd,

19 F.3d 37 (11th Cir. 1994) (no deliberate indifference to serious medical need of pneumonia when plaintiff was examined twice by emergency medical technician and twice by physician, and plaintiff received prescription medication); Pierre v. Gruler, No. 3:06-cv-45-J-32JRK, 2009 WL 383352, at *10 (M.D. Fla. Feb. 16, 2009) (Jail physician was not deliberately indifferent to plaintiff's shoulder injury resulting from fall to the ground after being shot with a taser gun, when plaintiff "received extensive and reasonable medical treatment by" physician and other medical providers at the jail and was "promptly referred" to an orthopedic surgeon.).

Although Simms has expressed dissatisfaction with the type, extent and effectiveness of his treatment, and has expressed particular disagreement with the doctor's initial assessment in the jail that stitches or staples should not be used to treat plaintiff's scalp laceration, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.

Contentions like Simms's that amount to a mere disagreement with the type, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Rowe v. Norris, 198 Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Prater v. Department of Corr., 11 Fed. Appx. 668, 2001 WL 370476, at *1 (8th Cir. 2001) (no constitutional violation when inmate demanded boots, rather than insoles, for injured foot); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999)  (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with

inference of deliberate indifference); <u>Williams v. Browning</u>, No. V-03-157, 2006 WL 83433, at \*1, \*3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not allege that he suffered any substantial harm from the delay, failed to state a claim for deliberate indifference).

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care fail to state a claim for relief under Section 1983, and defendants are entitled to summary judgment on this claim.

IV.   <u>IMPROPER DEFENDANT</u>

As to plaintiff's claim against the JPCC Medical Program, a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under Section 1983 as the statute and case law define that term.  <u>United States ex rel. Arzonica v. Scheipe</u>, 474 F.2d 720, 721 (3d Cir. 1973); <u>Cullen v. DuPage County</u>, No. 99C1296, 1999 WL 1212570, \*1 (N.D. Ill. Dec. 14, 1999); <u>Whitley v. Westchester County Corr. Facility Admin.</u>, No. 97CIV0420(SS), 1997 WL 659100, at \*6 (S.D.N.Y. Oct. 22, 1997); <u>Sponsler v. Berks County Prison</u>, No. 95-1136, 1995 WL 92370, at \*1 (E.D. Pa. 1995); <u>Powell v. Cook County Jail</u>, 814 F.

Supp. 757, 758 (N.D. Ill. 1993). Thus, Simms can assert no claim against the JPCC Medical Program under Section 1983.

## V. AMENDMENT WOULD BE FUTILE

Finally, even if Simms were provided an opportunity to amend his complaint to add additional defendants, such as individual doctors, nurses or other individual medical care providers, in place of the JPCC Medical Program, such an amendment would be impermissibly futile. The facts on which he bases his claims, as discussed above, establish that any claims he might assert under Section 1983 are without merit because his constitutional rights were <u>not</u> violated in any way. <u>Wimm v. Jack Eckerd Corp.</u>, 3 F.3d 137, 139 (5th Cir. 1993).

## RECOMMENDATION

It is **RECOMMENDED** that defendants' motions for summary judgment, Record Doc. Nos. 17 and 24, be **GRANTED** and that plaintiff's complaint as a whole be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object. <u>Douglass v. United</u>

<u>Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___22nd___ day of April, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE